## SPEER *vs.* MATTHEWS.

A suit was brought by C. & P. as plaintiff's attorneys, and they represented him until 1872, when they appear to have been absent from the court, and S. represented the case, and judgment was obtained. The names of C. & P. and S. were entered on the docket of the superior court, but only those of C. & P. appeared on the *fi. fa.* as representing the plaintiff. It was not shown how the judgment was signed. Shortly after the judgment was obtained and execution issued, it was turned over by C. & P. to another attorney, who kept it in life by causing entries to be made upon it until 1885, when he negotiated a sale of the *fi. fa.* and in pursuance thereof and of an agreement of the heirs of the deceased plaintiff, the administrator assigned the execution. The attorney who negotiated the transfer did not know of any claim of S. for fees, or that any other attorney than C. & P. was connected with the execution, and in the progress of the negotiations, he stated to the proposed transferee that the *fi. fa.* was not encumbered with any attorneys' liens. In the hands of the transferee the *fi. fa.* was levied, and brought a fund into court less than sufficient to satisfy it. S. claims a lien upo 1 the fund:

*Held* that, under the facts of the case, all parties having or claiming any interest in the execution, by lien or otherwise, were bound by the representations made to the transferee, and were estopped from interfering with his rights or taking from him any part of the sum raised by the sale.

April 16, 1887.

Attorney and Client. Liens. Estoppel. Before Judge
BOYNTON. Upson Superior Court. January Term, 1887.

Reported in the decision.

HALL & HAMMOND, for plaintiff in error.

ALLEN & SANDWICH, for defendant.

HALL, Justice.

R. A. Matthews, as the assignee of a *fi. fa.* in favor of
Harvey W. Todd, administrator of Joseph Todd, deceased,
caused it to be levied on the property of the defendant
in *fi. fa.*, Lemuel N. Dawson. The property was sold and
the money arising from the sale brought into court, when
Judge Speer claimed that he had a lien upon it as the
counsel who procured the judgment on which it was raised.
The suit was originally brought by Messrs. Cabaniss &
Peeples, and they represented the plaintiff until 1872,
when they appear to have been absent from the court.
At the spring term, 1872, Judge Speer represented the
case in court, and the judgment upon which this *fi. fa.*
issued was then obtained. This execution was issued in
April, 1872. Judge Speer's name appears to have been
entered upon the docket of the superior court of Upson
county as counsel for the plaintiff in the action. Caba-
niss & Peeples' names were also entered upon the docket.
How the judgment was signed, we can only infer. The
names of Cabaniss & Peeples appear on the back of the
execution as attorneys representing the plaintiff, and
no other name appears there. The judgment was
not introduced in evidence. Shortly after this judgment
was obtained, Cabaniss & Peeples turned it, together with
other business they had, over into the hands of Joseph
Cotten, Esq. an attorney residing in Thomaston. Mr. Cot-
ten looked after this business. He kept the execution in
life by causing the sheriff to make entries thereon. He

knew no other parties connected with the transaction than Messrs. Cabaniss & Peeples, from whom he received it, and whose instructions he was carrying into effect. In the fall of 1885, Matthews applied to Cotten to purchase this *fi. fa.* Cotten negotiated terms with him, and the purchase was effected for a specified amount of money. Cotten did not transfer the *fi. fa.*, but he caused the administrator to get authority from the heirs dispensing with the necessity of an order of the court of ordinary to sell, assign or transfer this *fi. fa.*, and Harvey W. Todd, the administrator, himself, under this authority, made the transfer.

The assignee of this *fi. fa.* does not seem to have had any direct communication with Todd. His negotiations for its assignment, as before remarked, were carried on with Cotten, who had the entire control of it, as the representative of Messrs. Cabaniss & Peeples. He was particular to inquire about the attorneys' liens, and so far as Cotten knew, the *fi. fa.* was not incumbered at all. He made that representation to Mr. Matthews, and upon it Matthews purchased the *fi. fa.* at the amount for which those to whom it belonged had authorized its sale and assignment, paying therefor somewhere between four and five hundred dollars. The *fi. fa.* was for a considerably larger amount. We do not understand that the judge who tried this case in the court below denied the existence of the lien of Judge Speer upon the *fi. fa.* He simply determined that, under the facts of the case, he had no right to enforce that lien upon the fund brought into court by the assignee and against his right to the same, and we think the conclusion reached by him was correct.

Judge Speer did not appear as attorney of record. It is true, he proves that he was employed by Todd, but it does not appear that he was to take the place of Cabaniss & Peeples, who were the original attorneys; Cabaniss & Peeples were never dismissed from the control and management of the suit. During all this interval of time from

1872 to 1886, Judge Speer seems not to have concerned himself in the slightest degree about this *fi. fa.* He took no steps to keep it in life. If his name had appeared to the judgment that was rendered in this case, it is somewhat strange that that judgment was not introduced in evidence on the trial. It must have been signed, from what appears on the execution, by Cabaniss & Peeples, who when it was issued did at once assume the control of the *fi. fa.;* they made arrangements to keep it in life, and turned it over to a vigilant, conscientious and cautious attorney practicing in that court. There is no dispute that Cotten made such representations as he believed to be true; that he had no notice of any claim of Judge Speer to an interest in this *fi. fa.;* and that he told Matthews, as he had a right to tell him, that there was no such incumbrance on the title to the execution. Matthews bought under these circumstances; he caused this execution to be levied; he raised the fund upon which this contention arises, and by his action brought it into court. The sum realized was wholly insufficient to discharge the debt in judgment, and when brought into court, he then learned for the first time that Judge Speer had any claim upon it. We think that Cotten was in this matter acting as the representative of all the parties having or claiming any interest in this execution, by lien or otherwise; at least, that Matthews had the right so to regard him; that they are all bound by the representations he made, whether they were true or not, and that the parties and attorneys in the case are estopped from interfering with the rights of this assignee, and from taking any part of the sum raised by the sale under execution. We therefore order the judgment affirmed.